Your honors, may it please the court, my name is Keith Dobbins, counsel for appellant City of Fontana, Fontana Police Department et al. I respectfully request three minutes of my allotted time be reserved for rebuttal. Why didn't you settle this case as a package, including counsel fees? I've never, at least in New York, the city never enters into an agreement of the kind that you've entered into. They just settled the case for one number that includes counsel fees. I was just curious why you didn't do that here. Well, Your Honor, the problem with settling the case at that time was there was an issue that we saw with attorney's fees. We considered the settlement demand of $20,000 on the eve of trial to settle the last remaining claim of the nine claims that Plaintiff Apelli originally brought to be insignificant in terms of the recovery of the total fees that were expended. And the language in there was merely the same language that he would have been entitled to under the code under 1988. And we put that in there under Apelli's demand because he wanted it in there to ensure we had no problem because we recognized that he would be entitled to attorney's fees under Section 1988. And thus, we put it in there and we reserved the authority of the court to determine what is right according to the proper standards. Now, the decision of the lower court in awarding the fees should be reversed for three reasons. First, the district court failed to adhere to binding Supreme Court and Ninth Circuit precedent, which requires a fee award to be commensurate with the degree of success achieved in the litigation. Second, the district court abused its discretion in the award of attorney's fees and costs by not distinguishing related versus unrelated claims and taking into account the overall relief versus the hours expended. But, counsel, Judge Guilford went out of his way to indicate that he'd read Hensley. He looked at the facts and he specifically asked the city to provide him any case law that tried to proportion attorney fees based on a settlement to some kind of a ratio of the claims that were dropped off. And you were unable to provide him any case of that nature. Was that because somebody hadn't looked it up before? Or is there such a case in the city's perspective that would, in this case, I think you had nine initial causes of action alleged in the complaint. One was settled for $20,000. The rest were dropped. Yes, Your Honor, that's correct. They were dismissed at the summary judgment stage. And that left one remaining cause of action. And I think Hensley, reading Hensley, it referenced that because in Hensley it said, had the respondents in that case prevailed on only one of their six general claims, a fee award based on the claimed hours clearly would have been excessive. And I believe that is indicative of the fact that... But Hensley had five out of six claims that were successful, right? This case you've got one out of nine. Correct. And that was the distinguishing, one of the distinguishing factors that they tried to limit Hensley with. In terms of other cases where there would have been minimal recovery like we had here, they said attorney's fees would be excessive if they were awarded commensurate with the hours that were claimed. And we have here, like I said, we have here eight of the nine claims dismissed at the summary judgment stage. They were deemed meritless based, taking into account all the facts, giving plaintiff the benefit of the doubt. Eight of the nine were dismissed. One was left. And then the final one was settled. It was not determined at the trial stage. There was no final decision. But everyone agreed that they were the prevailing party. How do you distinguish City of Riverside versus Rivera, where you had an award of $245,456? I mean, those were attorney fees. And the damages were $33,350. What's the difference between that case and this case? Your Honor, in Rivera, the court found that there was significant public benefit that was done by litigating it to trial and getting an award, and with that, a finding of liability. And they said with that, there was a significant public benefit. Here, there was no admission of liability. This was settled. Well, I've done the liability part, but that's to be, in quotes, an excellent result concept. Obviously, your counterpart is going to argue that there was an excellent result here. Why isn't this an excellent result? This isn't an excellent result because there was no finding of liability. There was no change. Well, that's not the issue, is it? Well. Wasn't the Riverside case the idea that somehow the result was one that would forever act as a prophylactic measure against the police from doing certain horrific things, and that that was a public benefit of such magnitude that the attorney fees were justified? That's correct, Your Honor. Why is your counterpart going to be wrong when he tells us how excellent this result is? Because comparing Rivera, city of Riverside versus Rivera, in Rivera, you had, you know, I used the precursor of finding of liability. What that indicates is that there was a wrongful action taken. Now, with us, we can't say that a $20,000 settlement was us admitting that we did something wrong. We looked at everything. We said, we're about to go to trial. You take into account all the costs that we're going to have to expend. $20,000 is beneficial to our client, so let's settle it. So that's really the sum and substance of your argument. It wasn't that it isn't an excellent result from their perspective, but rather that just as a trial tactic, you concluded that it made more sense to settle it. And there's simply nothing more than that. They didn't prevail from your perspective. They were a prevailing party in terms of recovering attorney's fees under 1988. They were not a successful party, which there is a distinction, because there was no determination made on the merits. And Appelli, I'm sure, will say that he did prevail substantially, but for his client, the $20,000 settlement was sufficient. It made him whole. He agreed to that. Now — Well, isn't that successful? That's what his client was looking for, and he got $20,000. Isn't that successful? It is successful. Well, they started off asking for $251,000 to settle, right? That's correct, Your Honor. They ended up settling for $20,000, so either one was wildly off in terms of its relationship to value, or the other was. That's correct. I see my time is running short. I want to reserve some time for that, but I'll get to that quickly. What I think is important in that point is that you take his final $20,000 settlement. If he would have come to us with that early on, then of course we would have said, well, we're going to save a lot of money. We're going to make you whole, and that's fine. Now, you compare that with the over $300,000 attorney's fees that he was requesting, the final award of over $200,000 in fees and costs that he was awarded. The level of success that he achieved was not commensurate with the fees that were awarded. It was an abuse of discretion, and it was also an erroneous interpretation by the trial court of Supreme Court precedent in Hensley and Ninth Circuit as well. And with that, if there are any other questions, I'll reserve time for rebuttal. Surely. Thank you very much. May it please the Court. I'm John Sluder. I represent Ian McCown. I think that the counsel overlooks the fact that there was language in the settlement that Ian McCown was deemed to have legally and factually prevailed. There were factual issues. Yeah, sure. I mean, but isn't that just a term of art that gets you to attorney's fees? I mean, nobody is disputing the fact that you were entitled to attorney's fees. So the question is how much. Well, the prevailing party, yes, that's the legal term. That means that you simply achieved some relief from the court. But you required the other side to change their position with respect to you. But when you say you factually prevailed, that's a different issue. Well, there was excessive force used on the claim that was settled. Right. I think what you have to do is look at the what the. . . How else do you prevail other than legally and factually? Well. . . If you prevail, you prevail legally and factually. I think when you can prevail technically, and that you can, you know, as in Farrar, where the courts said that there was a hobby. Farrar was a hobby where the courts said, well, technically, they're the prevailing party. But, you know, it was a de minimis recovery. When we. . . You have to give some meaning to that language, prevailing factual. Actually. Let me tell you something that really kind of has me troubled in this case, and that is that I can't tell really what the district court did. I know that it said, for example, that this. . . that the award that it came up with served the. . . was in part more in the public interest, but didn't explain how. And here there was no injunctive relief. There's no apparent change of position. And the second respect in which it's difficult to tell what he did was that he kind of just took your. . . the top number that you asked for, which I think was like 300 and. . . just over $300,000 plus cost, and basically said, well, that's not. . . that's kind of too much. So I'm going to come up with the amount that he actually awarded. Why shouldn't we just simply remand and say he got to help us out a little bit more? Well, I think that. . . I mean, I think I might have filled in the gaps a little bit with respect to the public policy. Because I talked. . . With respect to what? To the public benefit. Because in my brief I talked about the fact that since there were disputed factual issues. . . And those were resolved in, you know, according to the stipulation in our favor. That subsequent litigants could take those and use them in a case, for example. . . where the officers are alleged victims of a crime against a peace officer. And the. . . But isn't that a real stretch? I mean, that's certainly not an excellent result, is it? That's a really unusual factual situation. Where is the public benefit here? Well, the fact that there was. . . You quoted a case that said where there was a potential public benefit. Yeah, but that's what I'm trying to find in following up on Judge Reimer's question. Where is the public benefit here? The public benefit is the potential use of this case as collateral estoppel. What is it, an affirmative defense to a claim by a police officer against somebody? Is that what you're saying? Yes. That's a public benefit? Well. . . Who would admit that? I mean, it's so. . . It's probably the value is so limited. And you would have to open the door to the police officers to explain the circumstances of the settlement. It would almost be an abuse of discretion to admit this in a subsequent trial. This is not like a verdict. You would get into a whole collateral. . . satellite discussion of. . . You'd have to let the police officers show why they settled the case. That there were nine claims, that you were unsuccessful at eight, that it didn't pay to go to trial. All of that, admitting that would open the door to it. No, I can't believe that any judge would admit that in a subsequent trial, aside from the fact that it's totally speculative. Well, I don't think that it would have. . . I don't think the entire explanation would have to come in. I think the only thing that would have to come in was the fact that there were contested factual issues and the defendant admitted that those factual issues were resolved in favor of the police officers. Wouldn't he be entitled to explain why he entered into this settlement agreement? That's the whole point of it. It strikes me as totally far-fetched. And your other argument that someday it might be used as a claim, in a Monell claim against the city, if this would be one instance, I mean, this is so speculative. Well, guilty with an explanation really isn't a good explanation of a guilty plea. So I settled, but I thought I was saving a lot of money is not really a good explanation. And I think a court could bring in the fact that there were contested facts and the officer admitted that those facts were decided against them. I think that there's often language in settlements saying that the parties dispute the facts. That language is absent. Normally, it's the defendant that offers to say, well, this is a disputed claim. We're not admitting liability. That language is absent. Instead, there's this language. But ultimately, when you get back to it, what Judge Corman's question leads you to ultimately is, was this a great result? And I mean, at least to me, you look at the Farr v. Hobby, McGinnis v. Kentucky Fried Chicken, Morales v. City of San Rafael, and a bunch of others, they all universally reverse such awards unless there is a finding of an excellent result. And I, for one, I'm having real difficulty understanding what the excellent result is here. Judge Guilford referred to a good result, but I don't see it. It's like Judge Reimer said. He didn't explain his logic and how he gets to that. And certainly the idea that someone in the future can use this as an affirmative defense to a claim by a police officer hardly qualifies, does it, as a great public benefit? Well, I think cases have said that when there are substantial damages, that's a deterrent for future misconduct against the officer. And I think that the substantial damages in this case does. You think $20,000 is substantial damages? I think $20,000 plus attorney's fees is substantial. Well, but you're focusing on the attorney fee part. We're focusing on the fact that the attorney fees, you've got the tail wagging the dog here. Where is the public benefit? The attorney fees follows the public benefit, if I understand the reasoning of the Supreme Court in our precedent. I don't, it seems to me the dog's disappeared and it's all tail. Well, I don't see how this, I don't see how this is different from the Rivera case that the court alluded to, where there was, you know, I think that the differences in the attorney's fees in both cases was very similar. I think in Rivera it might have been $34,000. This was $20,000. But in that case, though, in Rivera, you had a situation where you really had a very serious situation. There was a call to the attention of the public. There was all kinds of prophylactic measures put into effect by the department to avoid future problems. Isn't that the situation in that case? I don't recall. Maybe the court's more familiar with Rivera than I am. I thought it was just a case where they had a trial and there were damages assessed against some of the defendants. And so I wasn't aware of those, that great deal of prophylactic. Well, again, if you accept arguendo this hypothesis that the case law seems to suggest that awards that are many times greater than the damages are acceptable only when a great public benefit is conferred, would you agree that in this case you really have to search to find a great public benefit? I think that finding the fact against the officers is a substantial public benefit. What's the police department going to do in the city of Fontana any differently as a result of this case than what it did here? Well, they don't do anything differently. They do so at their peril because now they have a finding that some of their officers have, you know, But that's a speculative. What law has been enacted? What injunction issued? What has anything been done that's going to change behavior? I have seen cases where just the very fact that the officers suffered substantial damages was sufficient to determine that there was a public benefit. And I also recall that the plurality in Rivera said that there was no rule of proportionality. In fact, unless there's no public benefit. No, the plurality said there was no rule of proportionality, I think. Can I ask you a question about why you should collect any money for the time spent on the Monell claim? I know it arises out of a common nucleus of facts, but to me it's sort of like concentric circles in which there's just a limited overlap. The reason for awarding fees for the case as a whole is the difficulty of separating out the amount of counsel fees that were devoted to a particular cause of action. But it seems to me the Monell claim is discreet. That is, you have to prove, of course, that there was the excessive use of force. But after that, everything that you do to establish the Monell claim is easily separable. It's easily separable to figure out when you're asking for documents or you're conducting discovery relating to a pattern of practice or a failure to properly supervise. It seems to me that all of that time is easily separated out. But it's not like false arrest and excessive use of force where it's hard to separate out. I grant that. But the Monell claim in particular, it's against a different defendant, and it involves facts that are totally removed from the immediate conduct of the police that led to this lawsuit. Yeah. The Monell claim, I think I looked at the defendant's objections to some of the Monell Monell time. And I think that according to their calculations, adding up, it came up to about 10 percent of the time spent on the case. But in this case, the Monell claim was based up on the fact that the officer that the department did not monitor the use of tasers and let unqualified persons use a taser. And that falls very well into the issue about whether the officer used excessive force. This untrained officer used excessive force on the town when he tasered him, when he tasered him inappropriately. And so in this case, the Monell does arise out of common core facts. And although they go in different directions, the court did find that. Well, he either used excessive force or he didn't. Whether he did it because he was not properly trained or because he was careless or because he was malicious, it seems to me is beside the point. I mean, it may only be 10 percent. That's $20,000, which you characterize as a substantial amount of money. Yeah, that's true. But the courts talk about a common core effect. The court says that it has to be completely the facts have to be completely distinct. As, for example, in I think it was Henley v. Eckerhart where they were completely different theories of recovery dealing with different terms of confinement, different aspects of confinement. This the you know, there would be no Monell claim if there hadn't been this episode with this inappropriate arrest. Let me. Mr. Trudeau, if you've now answered Judge Corman's question, you're way out of time. So thank you. Mr. Dobbins. I'll try to make this brief. I think each of you brought up important points that need to be emphasized. Judge Reimer, you had and the third reason that I had stated for overturning this decision was that the district court failed to indicate the number of hours or the hourly rate it used. What it did was say the hourly rate that was requested is too high and the number of hours I'm going to reduce them. It didn't specifically say what the hourly rate was. It didn't specifically say what number of hours is reasonable and appropriate. And this circuit said in Chalmers that the district court must state at the very least the number of hours worked and the rate it determined was reasonable. And at the very least, that ground alone would require reversal. Judge Smith, I believe you said you cited to McGinnis, which I think is appropriate to say no excellent result. Not surprising. I find it appropriate. And there the damage was reduced. And after the award was reduced, it looked at the attorney's fees that were awarded and said $148,000 is unreasonable if you consider that the award was for $34,000. If you couple that with this case, there, there was a finding of liability. There was a saying that the defendants were wrongful in their conduct. Here, we just had a settlement agreement. No admission of liability. I think it's something that a penalty is trying to stick on is that we admitted to something that was wrong. We did something wrong. He's going to be able to use the settlement agreement. I think all of you kind of addressed the fact that the settlement agreement is so speculative. If you read it, there's nothing in there that says the conduct of the defendant was wrongful. There's no admission of liability. It only says that they're going to settle the last claim for $20,000 and leave attorney's fees. But, counsel, you still get back to the issue of whether there's an excellent result of public benefit, don't you? I believe that that. I mean, there's enough in the settlement agreement to indicate these are the prevailing parties. They won the lawsuit. They're entitled to attorney fees. Well, I want to distinguish the prevailing party versus the success on the merits, and that's something that the Fifth Circuit said incised and distinguished, that being a prevailing party, there was facts similar to this. There was a settlement agreement. In the settlement agreement, they said the parties were prevailing parties. The court said, because you say that, it doesn't mean that the plaintiff was successful on the merits. Do we have any Ninth Circuit cases that say that or any U.S. Supreme Court cases that say that? Not specifically because you don't have many cases where there was a settlement agreement addressing this kind of issue where there was a big public benefit. Okay, but they were successful on the one claim. They got $20,000. We really get down, at least as I see the cases, to whether there was a public benefit. Correct, and I think that's the sticking point. And if we're going to say that they were successful because they received $20,000 of an award on one claim, you're going to get into the McGinnis scenario where it's only damages. There was no other public benefit other than them getting plaintiff being made whole $20,000 for a sole claim. Other than that, you have nothing else. And appellee referred to attorney's fees as being a deterrent, which is kind of a tough road to hoe. I think you're then getting into more punitive damages than attorney's fees for what is proper if you're going to use that as a deterrent. Mr. Thomas, if you've answered Judge Smith's question, your time is up. Thank you very much, Your Honor. Thank you. The matter just argued to be submitted. And we'll next hear argument in Fairwell v. IPC. Thank you.
judges: Rymer, Smith, Korman